UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN BITEMAN, | No. 2:12-cv-2498 CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI")[1] under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand the case under sentence four of 42 U.S.C. § 405(g) for further proceedings.

BACKGROUND

Plaintiff, born on August 28, 1957, applied on November 19, 2009 for DIB and SSI, alleging disability beginning December 4, 2008. Administrative Transcript ("AT") 175-179.

---

[1] Plaintiff also filed an application for disabled widow's benefits under section 202(e) of the Social Security Act.

1

Plaintiff alleged she was unable to work due to lower back problems, problems with both legs, blindness in one eye, and shoulder problems. Plaintiff alleged her pain was so severe she could not think clearly to concentrate. AT 181. In a decision dated June 6, 2011, the ALJ determined that plaintiff was not disabled.[2] AT 17-31, 39-52. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.[3]

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[3] On the claim for Widow's Insurance Benefits, the ALJ also found that "claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant
/////

2

> 2. The claimant has not engaged in substantial gainful activity since December 4, 2008, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with surgical history in 1999, and depression.
>
> 4. At no time relevant did an impairment or combination of impairments meets or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work [as defined in the regulations] except she can climb ramp/stairs frequently; she is limited to only occasional climbing of ladder/rope/scaffolds, balancing, stooping, kneeling, crouching, or crawling. She should avoid concentrated exposure to hazards, such as machinery, heights, etc. She would need a cane for long walks and uneven terrain. However, she is able to understand/remember/carry out simple instructions, make judgments on simple work-related decisions, interact appropriately with supervisors/coworkers; occasionally with the public and she could respond appropriately to usual work situations and changes in a routine work setting.
>
> 6. The claimant is capable of performing past relevant work as a [sic] inserting machine operator and cartridge technician/assembler marking devices. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2008, through the date of this decision.

AT 41-52.

ISSUES PRESENTED

Plaintiff contends the ALJ improperly rejected the opinions of treating and examining physicians. This issue is dispositive and requires remand.[4]

/////

---

met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. The prescribed period ends on July 31, 2017." AT 19.

[4] Plaintiff also argues that the ALJ improperly discredited her testimony and that of lay witnesses. On remand, the ALJ should specifically consider, in addressing plaintiff's credibility, the side effects of plaintiff's medications, including sedation. If the ALJ discounts evidence from lay witnesses, the ALJ must articulate reasons that are germane to each witness. See Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

3

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff contends the ALJ improperly evaluated the record medical opinions. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff contends the ALJ improperly disregarded the opinion of plaintiff's treating physician, Dr. Shulkin. In several provider certificates signed by Dr. Shulkin, he opined that plaintiff was incapable of performing her regular or customary work. AT 285, 290, 291, 296, 300, 317, 320, 321. In the "Findings" section of the provider certificate form, Dr. Shulkin noted that severe pain limited plaintiff's ability to sit/stand for long periods and that plaintiff's MRI showed a disc bulge at L5-S1. AT 285, 296, 300. Although the ALJ's decision briefly mentioned Dr. Shulkin's treatment records, the ALJ did not expressly address Dr. Shulkin's opinion regarding plaintiff's ability to perform her regular or customary work. AT 45-46. Defendant offers several bases, allegedly grounded in the record, in support of the contention that the ALJ committed no error in failing to address Dr. Shulkin's opinion. This court reviews the adequacy of the reasons specified by the ALJ, not the post hoc conclusions of the agency. See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court is constrained to review the reasons the ALJ asserts). As discussed below,

1  the ALJ discounted other record medical opinions which support a finding of disability. Viewing
2  the record as a whole, the total disregard of Dr. Shulkin's opinion undermines the legitimacy of
3  the reasons given by the ALJ for according little weight to the opinions of the other treating and
4  examining physicians. The court cannot find harmless error in the ALJ's failure to consider Dr.
5  Shulkin's opinion.
6     In assessing plaintiff's residual functional capacity, the ALJ rejected the opinion of Dr.
7  Sultan, another of plaintiff's treating physicians. AT 49. In March, 2011, Dr. Sultan opined that
8  plaintiff could sit less than a half hour, stand and/or walk less than a half hour, should lie down at
9  least two to three hours, and had additional limitations of no lifting or bending. AT 441. Dr.
10 Sultan noted plaintiff had discogenic disease of the spine with compression neuropathy,
11 confirmed by MRI and physical examination. Id., see also AT 326 (September 16, 2008 MRI),
12 394 (June 15,2010 MRI), 451-452 (December 8, 2010 MRI). The ALJ afforded little weight to
13 Dr. Sultan's opinion on the basis that it was "without substantial support from the other evidence
14 of record." AT 49. The reason given by the ALJ for rejecting Dr. Sultan's opinion is not
15 supported by the record. The objective evidence from the MRIs demonstrates significant
16 degenerative joint disease. AT 326, 394, 451-452 (disc bulges, exiting disc fluid, degenerative
17 end plate changes, atrophy, narrowing of the neural foramina). With a variety of different
18 doctors, plaintiff also demonstrated positive straight-leg testing, was unable to walk on her heels
19 and toes, had tenderness over the lumbar spine process, spasm, and reduced muscle strength in
20 the lower left extremity. AT 279-281 (Dr. Flanagan, orthopaedic evaluation), 334 (Dr. Shulkin,
21 treating physician), 342 (Dr. Lizarraga, treating physician), 353 (Dr. Canty, psychiatric
22 evaluation, observed plaintiff walked stiffly and at end of examination, plaintiff needed to be
23 physically helped off the couch), 393 (Dr. Onate, treating physician); 446-447 (Dr. Yen,
24 neurological consultant). Also contrary to the ALJ's assertion that plaintiff received "scant"
25 medical treatment for her complaints, plaintiff was extensively prescribed pain medications,
26 /////
27 /////
28 /////

underwent epidural steroid injections, was referred for surgical consult,[5] and underwent physical therapy.  AT 236, 324, 331, 434, 435, 438-440.

The ALJ also gave no reasons for rejecting the opinion of the consultative examiner, Dr. Flanagan, that plaintiff was limited to sitting four hours and standing/walking four hours in an eight hour workday.[6]  AT 282.  While according "significant" weight to the findings of the consultative examiners, the ALJ did not include Dr. Flanagan's sitting and standing/walking limitations in the residual functional capacity or in the hypotheticals posed to the vocational expert.  AT 49, 82-83.  In finding that plaintiff was not disabled, the ALJ relied on the testimony of the vocational expert that plaintiff could perform her past relevant work as an inserting machine operator and cartridge technician/assembler marking devices.  AT 50, 82, 89.  However, the vocational expert also testified that with all of the restrictions assessed by Dr. Flanagan, plaintiff would only be able to perform the job of assembler marking device "as she performed it from the record."  AT 89.  Contrary to the vocational expert's testimony, the only evidence of record shows that plaintiff performed this job in a seated position for eight hours.  AT 191.  In the absence of articulated reasons for disregarding Dr. Flanagan's sitting and standing limitations, the ALJ's reliance on the vocational expert cannot support the finding of non-disability.

CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is granted.

/////

/////

---

[5]  Dr. Fox recommended surgery and plaintiff was ready to proceed with the operation, but insurance was denied.  AT 234-235, 306-307, 322.

[6]  The ALJ assessed plaintiff with the residual functional capacity to perform the full range of light work with certain limitations unrelated to sitting or standing/walking.  The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  SSR 83-10.  This requirement is inconsistent with Dr. Flanagan's assessment.

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is denied.

3. This matter is remanded for further proceedings consistent with this order.

4. The Clerk of Court shall enter judgment in favor of plaintiff.

Dated:  October 25, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4 biteman2498.ss